IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ALAN JAMES BELL                                                        PLAINTIFF

v.                Civil No.  5:15-cv-05018-TLB-ELS

NURSE MILES SNYDER                                                     DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*

At all times relevant to the complaint, Plaintiff was incarcerated in the Benton County Detention Center (BCDC).  (Doc. 10)  Plaintiff is currently incarcerated in the Arkansas Department of Correction (ADC) East Arkansas Regional Unit.

Plaintiff contends Nurse Snyder refused to let him test his blood sugar level.  (Doc. 10, pp. 5)  As a result, Plaintiff states his blood sugar was too low on several occasions, and he kept "ending up in the hospital."  (Doc. 10, p. 18)  Defendant filed a motion for summary judgment on July 27, 2016.  (Doc. 27)  A Summary Judgment hearing was held on September 22, 2016, to permit Plaintiff to testify in response to the motion.  Plaintiff appeared via video conference. (Doc. 32)  The motion is ready for decision.

### 1.  Background

At the hearing, Plaintiff indicated he did not have any objections to exhibits filed by Defendant.  He did not have any documents to submit that had not already been filed.

-1-

Plaintiff testified as follows.  The time frame for this lawsuit is from September 1, 2014 until February 27, 2015.  Southern Health Partners (SHP) took over the contract to provide medical care in the BCDC on September 1, 2014.  Plaintiff was transferred to the ADC on February 27, 2015.

Plaintiff has been a  non-insulin-dependent diabetic since January 3, 2000.  He takes oral medications to control his blood sugar.  Plaintiff's blood sugar was checked regularly before SHP took over, and his blood sugar varied widely from day to day.  Plaintiff's  blood sugar was checked once or twice after SHP took over on September 1, 2014, but his blood sugar was no longer checked after that date.  Plaintiff also alleges that his medication was abruptly changed without any lab work to support the change in mid-September.  Plaintiff stated he never saw a doctor while he was in the BCDC.

Plaintiff further stated his blood sugar was checked as usual on September 1, 2014, and September 2, 2014.  On September 3, 2014, Nurse Snyder refused to check it, and told him the doctor had ordered them to stop checking his blood sugar.  Plaintiff asked Nurse Snyder how the doctor could do that without examining him and without any lab work.  Plaintiff stated Nurse Snyder refused to answer those questions, and Plaintiff was then taken back to the barracks.  A female head nurse told him he could ask for a blood sugar check if he thought something was wrong.

At the summary judgment hearing, Plaintiff was asked if he ever got sick as a result of the testing discontinuation.  Plaintiff  testified he did not get sick, but he got "the shakes" several times due to low blood sugar.  Plaintiff  was able to self-treat his shakes by keeping some candy with him at all times.  When he got the shakes he could eat the candy and it would bring his blood

-2-

sugar level back up in approximately twenty minutes.  Plaintiff stated he also fell a couple of times, but "got lucky" because he only got a few bruises.  Plaintiff did not see Nurse Snyder between September 3, 2014 and the end of December 2014.  He agreed that Nurse Snyder only refused to check his blood sugar on September 3, 2014.  He spoke with another nurse about his falls.  As a result of the falls, regular testing was resumed in early December and a nighttime diabetic snack was scheduled.  Plaintiff did not ask Nurse Snyder to check his blood sugar when he saw him again in late December.  When asked to describe what Nurse Snyder did wrong on September 3, 2014, Plaintiff testified "that is hard to say."  He then  indicated Nurse Snyder should not have stopped checking his blood sugar.  He also stated he could not get the doctor's name, so Nurse Snyder was the only name he had to work with.

### 2.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

 The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

**3.  Discussion**

Defendant has moved for summary judgment on the following grounds: (1) the discontinuation of regular blood sugar checks was based on Plaintiff's test results from September 1, 2014, and September 2, 2014, and the discontinuation was pursuant to protocol; (2) as a Licensed Practical Nurse (LPN), Nurse Snyder was bound to follow the doctors's orders concerning the protocol; and (3)  there is no evidence Plaintiff suffered any physical injury as a result of the discontinuation of his regular blood sugar tests.  (Doc. 28, pp. 4-6)

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  Luckert v. Dodge County, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded

-4-

those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." <u>Schaub v. VonWald</u>, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." <u>Popoalii v. Correctional Med. Servs</u>, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." <u>Id</u>. Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. <u>See Smith v. Jenkins</u>, 919 F.2d 90, 93 (8th Cir. 1990).

-5-

Plaintiff has failed to state a claim of deliberate indifference against Nurse Snyder for refusing to check his blood sugar on September 3, 2014. Based on his testimony and the record, Plaintiff merely disagreed with the decision to discontinue regular blood sugar testing. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). Plaintiff could not provide any evidence showing Nurse Snyder was reponsible for the decision to stop regular testing. Plaintiff admitted at the hearing that it was difficult to say exactly what Nurse Snyder had done wrong, other than he should not have stopped checking his blood sugar on September 3, 2014. Nurse Snyder is a Licensed Practical Nurse, not a doctor. He was therefore not responsible for the decision to stop regular blood sugar testing for Plaintiff. Nurse Snyder was further bound to follow the SHP doctor's orders to do so pursuant to both medical licensing law and SHP protocol. (Doc. 28-1)

Plaintiff further failed to state a claim for an Eight Amendment violation of his rights because he suffered only *de minimis* injuries as a result of the testing cessation. "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008). Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. "No clear line divides *de minimis* injuries from others." Id.

Several Circuits have utilized the test enunciated in Luong. v. Hatt, 979 F. Supp. 481, 486 (N.D. Texas Sept. 11, 1997) to evaluate the seriousness of an injury. The court stated that a physical injury is:

> an observable or diagnosable medical condition requiring treatment by a medical professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. which lasts even up to two or three weeks.. . . Injuries treatable at

home  [by a free world citizen]  and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e). . .

Id.; See also Perez v. United States, 330 Fed. App'x. 388, 389 (3d Cir. 2009) and Jarriett v. Wilson, 162 Fed. App'x. 394, 401 (6th Cir. 2005) (using the Luong test).  The Ninth Circuit found the Luong test required "too much," but also held that "any injury" is "too little" as an injury requirement.  Oliver v. Keller, 289 F.3d 623, 628 (9th Cir 2002) (back and leg pain caused from overcrowded cell conditions, undescribed physical injuries from a fight in the cell, and a canker sore were not more than *de minimis*.)

Both Plaintiff's testimony and his  medical records indicate his blood sugar was tested on the first two days of September 2014.  (Doc. 28-1, p. 5) The results fell within normal range, as defined by the SHP High Blood sugar treatment protocol.  (Doc. 28-2, pp. 1)  Plaintiff was told he could ask for blood sugar testing if he felt his blood sugar was low.  Plaintiff verbalized understanding of this.  (Docs. 28-1, pp. 2, 7; 28-3)  The record does not indicate he filed any written requests for testing.  (Doc. 28-1, p. 2)   Plaintiff testified at his hearing that he did not become ill as a result of the testing cessation.  He testified that he did get "the shakes" several times due to low blood sugar.  However, he also testified he could self-treat this by eating some candy, and his blood sugar would correct itself within approximately twenty minutes.  He said he fell a few times due to low blood sugar, but he only suffered some bruises as a result.  After his falls, changes to his medical regimen were made, including the reinstatement of regular blood sugar testing.  Thus, Plaintiff's only injuries as a result of the testing cessation were *de minimis* at most.

-7-

Because Plaintiff failed to state a claim for deliberate indifference to his medical needs, Defendant Nurse Snyder is entitled to judgment in his favor.

### 4.  Conclusion

For the reasons stated, I recommend that Defendant's summary judgment motion (Doc. 27) be **GRANTED** and this case **DISMISSED with prejudice.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of January 2017.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-8-